UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SERGEI VASENIN,<br><br>Petitioner,<br><br>v.<br><br>BRIAN ENGLISH,<br><br>Respondent. | CAUSE NO. 3:26cv615 DRL-SJF |

OPINION AND ORDER

Immigration detainee Sergei Vasenin, initially *pro* se but now represented by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The Warden answered the petition, Mr. Vasenin replied, and the parties filed supplemental updates. The court now grants the petition.

Mr. Vasenin is a Russian citizen who came to the United States in 2022 to request asylum. He was issued a notice to appear and paroled into the country. On July 10, 2025, he was ordered removed to Russia or, in the alternative, to Ukraine, and his applications for relief were denied [10-1]. He appealed to the Board of Immigration Appeals (BIA). While his appeal was pending, he was detained by United States Immigration and Customs Enforcement (ICE) on October 14, 2025. Soon after he was detained, the BIA dismissed his appeal on November 3, 2025 [10-2].

This is Mr. Vasenin's third habeas petition. His first one, challenging his detention while his removal proceedings were pending, was denied because his removal order had

become final and he was in the mandatory detention period required by 8 U.S.C. §§ 1231(a)(1), (a)(2). *See Vasenin v. English*, No. 3:25cv895, 2025 WL 3525037 (N.D. Ind. Dec. 9, 2025) (Leichty, J.). His second was denied because he remained in the six-month period of detention deemed by law presumptively reasonable and he failed to present circumstances that would overcome this presumption. *See Vasenin v. English*, No. 3:26cv285, 2026 WL 1074023 (N.D. Ind. Apr. 20, 2026) (Brisco, J.). He filed this third habeas petition in May 2026, six months after his removal order became final, arguing his continued detention was unlawful because his removal was not reasonably foreseeable. He argued his removal was not reasonably foreseeable because the Russian Federation has limited cooperation with the United States and does not issue travel documents in a timely manner, and Ukraine does not recognize him as a citizen. He stated that no travel documents have been issued, and ICE has provided no timeline for removal.

The Warden (through his federal counsel) answered the petition but provided no evidence that travel documents had been requested or that any other steps had been taken to effectuate the removal. Mr. Vasenin's reply provided more detail about the steps that had been taken, namely that he completed travel-document paperwork in May 2026, after he filed this habeas petition, and participated in an online post-order custody review with an ICE officer around June 15, 2026. Despite this, he said there has been no reported progress in obtaining a travel document.

After the petition was fully briefed, further developments occurred in Mr. Vasenin's removal process. Mr. Vasenin submitted a Notice of Material Developments, advising the court that the Department of Homeland Security (DHS) twice attempted to execute his

removal in August 2026. In an accompanying declaration, Mr. Vasenin explains that on August 10, 2026, he was transferred to a detention and removal staging facility in Louisiana in preparation for removal [12-1]. On August 13, he and several other Russian nationals met with a representative of the Russian Consulate, who began asking the detainees for their personal information. Mr. Vasenin reported to him that he came to the United States in 2022 because of the war, seeking political asylum. Mr. Vasenin reports that after he disclosed this information, he saw that the representative may have written the Russian word for traitor in his notes. He heard the representative speaking with an ICE officer, and apparently said some of the individuals were "good to go" and some were "denied." This encounter made Mr. Vasenin fear returning to Russia.

The next day, August 14, ICE began preparing detainees for removal, and he understood that the planned itinerary would take him to Moscow after other international connections. He avers that, right before he reached the aircraft stairs, a person checking the passenger list directed the escorting officers to remove him and another Russian detainee from the boarding process, and the plane left without them. When he later asked for an explanation, an ICE officer told him there might have been a problem with his documents or that ICE might not have his passport.

Mr. Vasenin details in his declaration another attempt to remove him from the United States a few days later. On August 17, ICE transferred him from Louisiana to Texas, and then to Arizona. On August 19, he flew commercially from Arizona to Chicago, Illinois, accompanied by ICE personnel. When he arrived in Chicago, he was told the proposed itinerary would take him from Chicago to Washington, D.C., to Morocco, and then to Russia.

While in Chicago, Mr. Vasenin provided ICE officers a written statement describing his fear of returning to Russia and requesting that his fear be documented and reviewed. He reports that he was told he could travel to Morocco and, once there, travel somewhere else. He says he saw the travel document, which was in Russian, and it expired the next day, August 20. He then became concerned that he did not possess acceptable documentation for Morocco to admit him or permit him to travel onward. He told officers he was willing to travel to Turkey, if Turkey would admit him. He says the officer began making efforts to determine whether travel to Turkey could be arranged, so Mr. Vasenin agreed to continue from Chicago to Washington, D.C., while that possibility was investigated.

Mr. Vasenin says he boarded the commercial flight from Chicago to Washington, D.C., and upon arrival again expressed a fear of returning to Russia and concern about being sent to Morocco without clear documentation permitting lawful admission and onward travel. He offered to purchase a ticket to Turkey himself, but he said that a supervising officer later informed him that Turkish Airlines would not transport him using the travel documentation available to him and acknowledged that documentation problems could also arise in Morocco. Then, he says, DHS personnel decided not to place him on the Morocco flight and instead returned him to Chicago. He boarded the return flight to Chicago. He was returned to Miami Correctional Facility around August 21.

In response to Mr. Vasenin's submission, the government reports that Mr. Vasenin was rescheduled for removal the week of September 20, 2026 [14]. After that week passed, Mr. Vasenin submitted a notice that the removal did not occur, and he remains detained at Miami Correctional Facility [17].

After the rescheduled removal did not occur, the court ordered the Warden to file a supplemental status report addressing the current state of Mr. Vasenin's custody. In response, the Warden said DHS scheduled Mr. Vasenin for removal on August 19, 2026, but he refused to board the flight. DHS then planned to remove him during the week of September 20, but his removal flight was being rescheduled. The Warden attached a copy of a Notice of Failure to Comply [18-1][1] that was served on Mr. Vasenin:

> On August 19, 2026, you refused to comply with the immigration judge's removal order when you refused to board the removal flight. Therefore you have failed to comply with your obligation and are acting to prevent your removal from the Untied States. The removal period is therefore extended in your case.

The notice advised Mr. Vasenin that he would remain in ICE custody until he demonstrated he is "making reasonable efforts to comply with the order of removal" and is "cooperating with ICE's efforts to remove you."

Mr. Vasenin argues he is making reasonable efforts to comply with the removal order. He reports that, at the end of August 2026, he requested to speak with an ICE supervisor to learn what is required from him for his removal. He says on September 29, 2026, he spoke with an ICE supervisor and asked him to review his case and advise whether there were any current plans, events, or actions concerning his case or removal. The supervisor reported that he did not see any other currently scheduled events or actions concerning him in his file. Mr. Vasenin points out that the Warden doesn't explain what

---

[1] According to the information typed on the Notice, it was served on Mr. Vasenin at the Broadview Service Staging Area on July 20, 2025, and Mr. Vasenin signed the notice on August 20, 2026 [18-1]. But Mr. Vasenin asserts he was served the Notice on September 15, 2026, at Miami Correctional Facility [17-1]. This dispute is not material to the decision in this case.

happened during the first unsuccessful removal attempt on August 14, and he disputes that his actions on August 19 constitute non-cooperation. He further argues that, even if he can be found noncooperative, he complied with all ICE requests since then and there is no evidence his removal is reasonably foreseeable after a year of post-removal-order detention.

The Warden first argues that the court lacks subject matter jurisdiction over Mr. Vasenin's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits of the petition, the court follows the analysis set forth in *Zadvydas*. By statute, noncitizens who are subject to a final order of removal must be detained for a period of 90 days, during a "removal period." 8 U.S.C. §§ 1231(a)(1), (a)(2). This removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders a stay of removal, or (3) upon the noncitizen's release from non-immigration confinement. 8 U.S.C. § 1231(a)(1)(B). Mr. Vasenin's removal period began November 3, 2025, when the BIA dismissed his appeal. *See* 8 U.S.C. § 1101(a)(47)(B)(i); 8 C.F.R. § 1241.1(a). It ended February 1, 2026.

The Warden doesn't explicitly argue that Mr. Vasenin's non-cooperation serves to extend the removal period, but he provided a copy of the notice, which explicitly states that because of Mr. Vasenin's alleged refusal to board the plane on August 19, 2026, the removal

period would be extended, citing to 8 U.S.C. § 1231(a)(1)(C). Section 1231(a)(1)(C) is inapplicable here:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(C). By its plain terms, it serves to *extend* the removal period, not reimpose a new one months after the removal period has already ended. This implies that for ICE to invoke this provision, the alleged acts of non-cooperation must have happened in the removal period. This conclusion is supported by language in the notice too: "Section 241(a)(1)(C) [§ 1231(a)(1)(C)] provides for the extension of the statutory removal period if you refuse, *during the removal period*, departure, or conspire to act to prevent your removal subject to an order of removal" [18-1 (emphasis added)]. Similarly, the regulations governing § 1231(a)(1)(C) provide that if the noncitizen does not cooperate, ICE "will provide such an alien with a Notice of Failure to Comply, as provided in paragraph (g)(5) of this section, *before the expiration of the removal period*," 8 C.F.R. § 241.4(g)(1)(ii) (emphasis added), and later specify that "[ICE] shall advise the alien that the Notice of Failure to Comply shall have the effect of extending the removal period as provided by law, *if the removal period has not yet expired*, and that [ICE] is not obligated to complete its scheduled custody reviews under this section until the alien has demonstrated compliance with the statutory obligations," 8 C.F.R. § 241.4(g)(5) (emphasis added). This is not to say that the events of August 19 are irrelevant to whether Mr. Vasenin's detention is authorized. Rather,

the events of August 19 do not serve to extend the mandatory detention during the removal period, and the court will continue with the analysis under *Zadvydas*.

Beyond the removal period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[2] No one contests that Mr. Vasenin's continued detention is authorized because he is inadmissible under § 1182.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. To avoid a constitutional due process problem with § 1231(a)(6), including for a noncitizen who remains in the country after being ordered removed, the law requires that his detention be limited to a

---

[2] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

The law materially defers this difficult judgment to the Executive Branch for a total six-month period, as detention then is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. This period for Mr. Vasenin ended approximately May 3, 2026.

The court has the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.* at 699; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. In this, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700.

The petitioner bears the initial burden. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). If he "provides good reason to believe that there is no significant

likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701 (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

Mr. Vasenin's detention has passed the six-month presumptively reasonable period of detention, so the inquiry turns to whether he has provided good reason to believe his removal is not significantly likely in the reasonably foreseeable future. He need not show that deportation is "impossible" or prove "the absence of *any* prospect of removal," *Zadvydas*, 533 U.S. at 702, yet he must typically offer something more than the mere passage of time. Though Congress may have "doubted the constitutionality of detention for more than six months," the passing of this presumptive six-month period "does not mean that every alien not removed must be released." *Id.* at 701. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) ("detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process"). That said, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Zadvydas*, 533 U.S. at 701.

When Mr. Vasenin filed this petition, he provided good reason to believe his removal was not significantly likely in the reasonably foreseeable future based on the alleged limited cooperation between the Russian Federation and the United States and based on his assertion that Ukraine does not recognize him as a citizen. This showing was effectively rebutted by the government when it reported that Mr. Vasenin's removal was rescheduled for removal the week of September 20, 2026.

But now that the removal did not occur, the situation is more complicated. The government does not explain why the removal in September did not occur or provide specific details about a future removal, beyond that a flight is being rescheduled. Why it might take another two months to reschedule a flight is unclear. The court has no evidence that the government is in possession of travel documents or any indication of how easily such a document may be obtained. Instead of focusing on the foreseeability of removal, the government seems to argue that Mr. Vasenin's continued detention is authorized by his refusal to board the removal flight on August 19.

Noncooperation can preclude a finding that removal is not reasonably foreseeable. *See Kidane v. English*, No. 3:26cv235, 2026 WL 1113375, 3 (N.D. Ind. Apr. 24, 2026). One cannot typically create the condition and then maintain standing to complain about it. And the government cannot be expected to execute a removal if the noncitizen is the obstacle to his own removal, or even to pivot on a dime to recreate or perfect the arrangements for removal. These things just don't happen overnight. Else a noncitizen could interfere even once with removal and then immediately argue that removal was no longer foreseeable.

At the same time, a single act of noncooperation does not grant the government a perpetual license to detain a noncitizen.[3] Based on this record, Mr. Vasenin's alleged refusal to board the plane on August 19 did not ostensibly prevent the government from rescheduling his removal for the week of September 20, suggesting his prior action was no

[3] Continued detention strictly as punishment for his noncooperation is inappropriate under § 1231(a)(6), as the two regulatory goals of the statute are "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (2001) (cleaned up). The government has the option of initiating criminal proceedings against Mr. Vasenin under 8 U.S.C. § 1253(a)(1)(C) if it wishes to punish him for his actions.

longer an impediment to his removal. ICE has not established that it could not (or did not) obtain another set of travel documents because of the August incident, and there is no reason given for why the removal did not occur in September. On this record, Mr. Vasenin's noncooperation does not preclude a finding that removal is not reasonably foreseeable.

Instructive here are regulations governing 8 U.S.C. § 1231(a)(1)(C) about extending the removal period for noncooperation. Under these regulations, "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal" the noncitizen is provided with a notice, which must include, among other things, "the circumstances demonstrating his or her failure to comply" with the removal process and "an explanation of the necessary steps that the alien must take [] to comply with the statutory requirements." 8 C.F.R. §§ 241.4(g)(1)(ii), (g)(5)(ii). In cases of noncooperation, the removal period is extended until the noncitizen demonstrates "that he or she has complied with the statutory obligations." 8 C.F.R. § 241.1(g)(1)(ii). After the noncitizen has demonstrated compliance, regulations provide that ICE "shall have a reasonable period of time [] to effect the alien's removal." *Id.*

Analogizing here, it likewise seems appropriate that ICE be given a reasonable period to continue to detain Mr. Vasenin to effectuate his removal after his noncooperation. Nearly three months have passed since August 19, and ICE was able to reschedule the removal flight in about a month's time from that date. There is no reported further movement on Mr. Vasenin's removal, and no explanation has been given for why the removal did not occur in September. The court cannot rule on what it does not have. With this lack of information

about the prospects for Mr. Vasenin's removal, the court can only conclude that his removal is not reasonably foreseeable. Mr. Vasenin must be released, though removal efforts may continue while he is on supervision.

For these reasons, the court:

(1) GRANTS the petition (ECF 1) to the extent that the court ORDERS the respondent to release Sergei Vasenin on appropriate conditions of supervision and to certify compliance with this order by filing a notice with the court by **November 16, 2026**, and

(2) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure Sergei Vasenin's release.

SO ORDERED.

November 13, 2026

*s/ Damon R. Leichty*
Judge, United States District Court